IN RE ESTATE OF FRANK BAGNOLA, Deceased.

A. CONTE, Appellant, v. URBANO DI CORPO, Appellee.

EXECUTORS AND ADMINISTRATORS: Removal—Notice of Proceeding—Acceptance of Service by Attorney. Notice of a proceeding to remove an administrator, nonresident of the county, must be served on the administrator himself. (Section 3418, Code, 1897.) An acceptance of service by an attorney, employed by the administrator to secure his appointment and to assist in closing up the estate, on an appearance by such attorney by virtue of such former employment, is a nullity. "Authority to help live is not authority to consent to death."

EXECUTORS AND ADMINISTRATORS: Removal—Necessity for Hearing on Evidence—Pleadings Not Evidence. Simply present-

ing to the court a petition for the removal of an administrator, and accompanying the same with the professional statements of counsel, are wholly insufficient on which to base an order of removal. Removal requires "cause shown after due hearing."

**EXECUTORS AND ADMINISTRATORS:** Removal—Nonresidence Insufficient Ground—Foreign Consul. The *nonresidence* of an administrator is no ground on which to base an order of removal, especially when such nonresident administrator was a foreign consul, having right, under treaty obligations, to initial administration.

**EXECUTORS AND ADMINISTRATORS:** Removal—Facts Justifying—Errors of Judgment. No ground of removal is furnished by the fact that a duly appointed administrator disagreed with another (who was seeking his removal) over the wisdom of a proposed settlement of a claim due the estate.

**EXECUTORS AND ADMINISTRATORS:** Appointment—Expiration of Right of Heir to Nominate. The appointment of an administrator may not be invalidated simply because made at the request of an heir, at a time when the right of such heir to nominate had expired.

**EXECUTORS AND ADMINISTRATORS:** Removal—Treaty Obligations—Effect. The courts of this state have power, on proper showing (Section 3416, Code, 1897), to remove a foreign consul as administrator, even though the original appointment was in obedience to a treaty obligation.

**JUDGMENTS AND DECREES:** Void Judgment—Finality by Reason of Proceedings Had in Consequence. A void judgment may pass beyond the point of practical recall, and in that sense become a finality, by reason of proceedings taken in consequence of the entry of such void judgment.

PRINCIPLE APPLIED: An administrator was appointed and duly qualified. Later, a petition was filed asking for the removal of said administrator. The court acquired no jurisdiction of the administrator, because no citation was served on the administrator. The application for removal came on for hearing, an order of removal was entered, and another administrator was appointed at the request of one who was *sole* heir. The administrator appealed. On appeal, it appeared that the second appointee had proceeded, under the orders of the court, and fully settled the estate to the satisfaction of said *sole* heir. *Held*, the court would not reverse, the holding being based on the fact that

a reversal could effect nothing except to settle who should pay costs.

**APPEAL AND ERROR:** Reversal—Costs Only at Stake. A reversal
8 will not be ordered, even though the lower court was radically in error, when such reversal can effect nothing except to settle who shall pay costs. ·

PRINCIPLE APPLIED: See No. 6.

**APPEAL AND ERROR:** Rehearing—Shifting of Position—Effect.
9 An appellant will not be permitted on rehearing to assume a position wholly at war with the position assumed by him on original submission. So held where, on original submission, the court was clearly led to act and decide on the assumption that a widow was the *sole* heir of deceased, with later attempt, on rehearing, to dispute such fact.

*Appeal from Polk District Court.*—LAWRENCE DEGRAFF, Judge.

TUESDAY, OCTOBER 19, 1915.

REHEARING DENIED, WEDNESDAY, DECEMBER 13, 1916.

THIS is an appeal from the removal of appellant Conte, as administrator of the estate of Bagnola, and appointing appellee as administrator in his stead, and from a refusal to vacate said order, and to reinstate appellant as administrator. —*Affirmed.*

*Royal & Royal* and *Hyde & Westbrook,* for appellant.

*Carr, Carr & Evans,* for appellee.

SALINGER, J.—Frank Bagnola died intestate in May, 1913, and at the time of his death was a citizen of the royal Italian government. The appellant Conte was then, and still is, the duly appointed and accredited consular agent of said government, for and in a district embracing the state of Iowa. On July 5, 1913, Conte was duly appointed administrator of the estate of Bagnola, and he duly qualified and

proceeded to, act. He was, at the time of his appointment, and still is, a nonresident of this state. An application to remove him as administrator was sustained, and the appellee, Di Corpo, appointed in his stead.

I. Code Section 3418 provides that, upon the filing of a petition to remove an administrator,—

"a citation shall issue to the person complained of, requiring him to appear and answer the complaint, and if he is not a resident of the county where it is made, notice thereof shall be served upon him in such manner as the court or judge thereof or clerk may direct."

1. EXECUTORS AND ADMINISTRATORS: removal: notice of proceeding: acceptance of service by attorney.

No citation was served upon Conte. It appears, however, that Messrs. Clark & Claussen, duly licensed attorneys, at one time acted as attorneys for Conte, and we may assume that it was in the conduct of administrator's business on part of Conte as consular agent. In some of this work, Mr. Wilson, another duly licensed practitioner, has acted with Clark & Claussen. We may concede that the petition filed by Conte to be appointed administrator was signed and filed by Clark & Claussen and Mr. Wilson, as attorneys for Conte, and also that, while Wilson never had any express authorization to accept service upon or waive any notice, he had written authority from Clark & Claussen to act for them in all matters arising in the district court of Polk County. He admitted service of a citation requiring Conte to appear to the petition to remove, and forwarded the same to Clark & Claussen. It may further be conceded that both Clark & Claussen and Wilson had actual notice that the petition to remove had been filed; knew that a hearing thereupon was set; and, though the order of removal recites neither the appearance of parties or counsel, that these attorneys took part in such hearing—a concession which obviates the need of considering either the argument that there was an appearance because the record recites the taking of an exception, or the effect upon that argument of *Hamill v. Schlitz Brew-*

*ing Co.,* 165 Iowa 266, at 288, 289, wherein, though the opinion does not show it, an exception was taken to an entry correcting an earlier order, and alleged want of notice and appearance are held to make the last entry void. It appears, also, that certain fees and attorney allowances provided for in the order of removal were paid to Wilson, and that some of these he paid over to Clark & Claussen. Conte made no appearance, and there is nothing in the record to indicate, if that be material, that he personally had any notice which was, if there can be any such, the equivalent of the service of citation. There was, therefore, no jurisdiction conferred to remove Conte, unless the service made on Wilson was service on Conte, or said participation in hearing made notice needless. This involves the effect of the relation which Wilson and Clark & Claussen sustained to Conte. We are of opinion that being retained to apply for administration, and to aid in the conduct of administration business, after appointment is made, gives no authority to waive service of notice of, or appear to, a petition to remove the administrator. The retainer described is, first, to obtain administration, and, next, to aid the appointee in administering. A petition to remove is an indictment of the administrator on the civil side, and the order of removal terminates the administration and all need of or right to aid in the work of administration under the one-time administrator. Authority to help live is not authority to consent to death. Service of citation upon Conte himself was, in the circumstances at bar, indispensable. *Haddick v. District Court,* 160 Iowa 487; *Schwilke's Appeal,* 100 Pa. St. 628; *State v. Anderson,* 84 Tenn. 321, at 329; *Gasque v. Moody,* 20 Miss. 153; *Horn v. White,* 127 Ill. App. 222, at 227; *Munroe v. People,* 102 Ill. 406; *Hanifan v. Needles,* 108 Ill. 403; *Briggs v. Probate Court* (R. I.), 50 Atl. 335. We conclude that the district court removed Conte without having acquired jurisdiction of his person.

II. The record is quite confused as to just what was done in the way of a hearing upon the petition to remove.

A careful study has satisfied us that the petition to remove

2. EXECUTORS AND ADMINISTRATORS: removal: necessity for hearing on evidence: pleadings not evidence.
was treated as being of some evidentiary value, and that, for the rest, there was discussion by the court and counsel, and statements by counsel, which the court treated as a species of professional statement. It is fairly clear that no witnesses were sworn, or other testimony adduced under sanction of an oath. The petition itself is not evidence. *Wilson v. Hoss*, 22 Tenn. 142; *Gregg v. Wilson*, 24 Ind. 227. And we think that the statute providing for the petition (Code Section 3417) contemplates that that paper is in the nature of a pleading merely. In our opinion, the removal should not have been ordered upon such a hearing. Removal requires "cause shown after *due* hearing." 18 Cyc. 157 (VIII).

III. The application to remove, if treated as being evidence, asserts, in effect, that the sole heir of the decedent was his wife, who has been at all times a resident of Italy;

3. EXECUTORS AND ADMINISTRATORS: removal: nonresidence insufficient ground: foreign consul.
that decedent left no property except a claim against a railroad company for injuries that caused his death; that a settlement has been agreed upon, on which the railroad was to pay $1,200 in full of the claims of the widow, and sole heir, out of which she should receive net $900, and that, of the remaining $300, $100 should be paid to an attorney in Italy, representing her, and $200 to the petitioner applying for removal and asking to be substituted; that Conte was appointed while this settlement was under negotiation, without the knowledge of the widow or her attorney; that he is preparing to sue the railroad company, and that such action can have no other result than to make expenses and charges against the estate, and diminish what the widow will receive; that decedent was 50 years old at the time he was injured, and there is considerable doubt as to the liability of the railroad; that in the opinion of applicant the settlement agreed upon is fair and equitable; that

he has advised Conte and his attorneys of the situation, and Conte will not consent that said settlement be carried out; and that Conte is a resident of Milwaukee, Wisconsin. Had the court had jurisdiction, and were the petition to remove, evidence, what the petition declares is, we think, not sufficient ground for removal. Conte was a nonresident of Iowa when first appointed. We held, in *Foley v. Cudahy Packing Co.*, 119 Iowa 246, that, under Section 3297 of the Code, a nonresident may be legally appointed an administrator in this state. While we say, in *Chicago, B. & Q. R. Co. v. Gould*, 64 Iowa 343, that, ordinarily, a nonresident should not be appointed, we declare that nonresidence alone does not disqualify. It is thoroughly well settled that, under our treaty obligations, the consul has the initial right to administer upon the property of the subjects of his country. It is clear, then, that Conte's being a nonresident did not justify his removal.

In effect, all that remains is that the administrator did not approve of the settlement above described, and that, in the opinion of the applicant, the same was a fair settlement.

4. EXECUTORS AND ADMINISTRATORS: removal: facts justifying: errors of judgment.

If the statement of such opinion by way of pleading be conceded to be evidence, surely, that the applicant who is to get a fee, if sustained, had one opinion as to the quality of the settlement, and the administrator another, is no ground for removal. For aught that appears, he may have been opposed to it because he thought that, under the circumstances, a $300 deduction, of which $200 went to the applicant, and $100 to an Italian attorney, was too large a part of a $1,200 estate.

In 18 Cyc. 165 (Note), it is said that "errors of judgment not amounting to malfeasance are not sufficient cause for the removal of an administrator."

In *In re Estate of Fisher*, 128 Iowa 626, where the estate owed no debts, we held it insufficient ground for removal that the administrator declined to sell railroad stocks which were

claimed to be hazardous property, and to be fluctuating in value.

It is said in 18 Cyc. 165 (Note), that all the administrator need exhibit is the ordinary diligence and caution of ordinarily prudent men in the conduct of their own business.

It is bad faith that is interdicted. 18 Cyc. 233; *In re Estate of Ring*, 132 Iowa 216, at 222; *In re Estate of Fisher*, 128 Iowa 626, at 630; *McFadgen v. Council*, 81 N. C. 195.

It is thoroughly well settled that, where the statute prescribes grounds for removal, none others are available. And the statute does not make any of the matters charged in the petition to remove, a ground for removal. Code, Section 3416. Upon this thought, we have held it to be no ground for removal that the administratrix, after appointment, claimed practically all of the estate, after the payment of debts and expenses. *Fry v. Fry*, 155 Iowa 254. It follows that the removal was unwarranted, and also that the order of removal should have been vacated, unless it be that, for reasons discussed later, such vacation would have accomplished nothing.

IV. Appellant urges the widow had, at most, only 20 days in which to exercise an election to become administrator; that her right to nominate is equally limited as to time; and that, therefore, the fact that the widow, and sole heir, desired the substitution made, is no proper basis for making it. If the removal was unjustified, the correction of that error makes harmless any error in substituting. If the removing was rightful, it becomes quite immaterial what effect the nomination should be given. Even if the desire of the sole heir gave the applicant no right to be appointed, yet, as the court might have appointed him in the absence of all suggestion, the appointment cannot be invalidated merely because the request of the heir is of no efficacy.

5. EXECUTORS AND ADMINISTRATORS: appointment: expiration of right of heir to nominate.

V. We cannot concur in the claim of appellant that, by

reason of treaty right and the application of the most favored nation clause, the courts of this state have no power, under any circumstances, to remove a consul who has been appointed administrator. Giving to our treaties with Italy, and those with other nations the most favorable, the most liberal interpretation within reason, and our treaty obligations do not go beyond obliging us to give to the representative of Italy the right to care for the property of the decedent—in effect, *the right to be appointed administrator.* In our opinion, the authorities cited assert no more than this. Treaty of the United States with Italy, May 8, 1878, Art. 16; Treaty of the United States with Paraguay, February 4, 1859, Art. 10; Article 8 of Treaty of United States with Germany, 1871; *In re Baglieri's Estate,* 137 N. Y. Supp. 175; *In re Madaloni's Estate,* 141 N. Y. Supp. 323; *In re D'Adamo's Estate,* 141 N. Y. Supp. 1103; *In re Tartuglio's Estate,* 33 N. Y. Supp. 1121; *The Bello Corrunes,.* 6 Wheaton (U. S.) 151; Devlin on Treaty Power, Sec. 202; Wharton's International Law Digest, Vol. 1, p. 782.

*6. Executors and Administrators: removal: treaty obligations: effect.*

VI. We are constrained to hold that, notwithstanding all the aforesaid errors, we are powerless to effectuate anything by reversal, and compelled, under rules well settled and ordinarily salutary, to affirm, because a reversal could effect nothing except to settle who shall pay costs. The trial court has entered an order authorizing Di Corpo to settle with the railroad for $1,200, and to distribute as prayed by him. It appears that the distribution has been fully made, and that the widow, who is the only heir, has receipted in full payment and satisfaction as widow and sole surviving heir. The only asset the estate has is this claim for damages, which has been collected and thus distributed. We concede that the administrator has the right to sue for personal injuries to his intestate, and this though he was an alien (*Worden v.*

*7. Judgments and Decrees: void judgment: finality by reason of proceedings had in consequence.*

*8. Appeal and Error: reversal: costs only at stake.*

*Humeston & S. R. Co.,* 72 Iowa 201; *Rietveld v. Wabash R. Co.,* 129 Iowa 249); and concede that the cause of action for wrongful death of decedent belongs exclusively to the administrator of his estate, in the sense that he is the proper party to enforce same, and that no agreement by or power of attorney from the widow of Bagnola could affect "the lawful right and duty of Conte, as administrator, to collect claims properly owing and belonging to the estate." But, as distinguished from abstract rights, we have this situation: Under Code Section 3313, the damages, paid for the death of Bagnola may not be appropriated to the payment of debts, even if the record showed, as it does not, that there are any. No judgment of ours can compel the widow, a citizen and resident of Italy, to repay what she has received in the distribution of the estate, and from the realization of its only asset. Even if that be passed, if we reversed, and directed the administrator to disregard the settlement, and if, in some manner, he could and would then proceed and obtain a sum much greater than $1,200, he would, in that event, only obtain additional money for the widow. When the administration came to be wound up, every dollar obtained would go to her. She has given an acquittance, and is satisfied with the amount she has received. In what way can we do that which would be, in effect, an attempt to compel her to take more money than she wants? The trouble with it all is that, in the circumstances here, the widow is the estate, and it does not concern Conte, and we cannot control that the owner of the estate has no desire to enlarge it. We reach this conclusion regretfully, but cannot make bad law, and what would be a pronouncement so idle as to be ludicrous, to meet the exigencies of a hard case. The conclusion we have reached is fully sustained in authority, as well as reason, and has express support in principle in *Moller v. Gottsch,* 107 Iowa 238, and *Evans v. Lawrence* (Iowa), 153 N. W. 173 (not officially reported). See, as somewhat in

point, *Christie v. Chicago, R. I. & P. R. Co.,* 104 Iowa 707.—
*Affirmed.*

DEEMER, LADD and GAYNOR, JJ., concur.

SUPPLEMENTAL OPINION.

WEDNESDAY, DECEMBER 13, 1916.

SALINGER, J.—I.  On the assumption that the widow of
Bagnola was his sole heir, we reached the conclusion that a
reversal would effect nothing.   We are now told that the
record fails to show she was such heir, and
on application for rehearing an attempt is
made, by certificate, to show that there are
other heirs.

*9. APPEAL AND ER-
ROR: rehearing:
shifting of posi-
tion: effect.*

This appellant was fully advised that appellee asked
us to affirm upon the express grounds that a claim against
a certain railroad was the only asset of the estate; that money
collected through settlement had all been disbursed under
order of court, "and the sole heir and beneficiary has re-
ceived and receipted for said money."  The brief of appellee
made just this point.  Were we to concede that the widow
is not the sole 'heir, it' would not follow that we should now
deal with the cause as though there were other heirs.   Con-
sidering the point made by appellee, on application for rehear-
ing, it may become of controlling importance what appellant
did not do or say.  He may so present a case as to lose the
right, after decision, to have us do or find what might have
been his due had he properly presented his claim; or if,
to put it more strongly, he had not, in effect, misled the court
into doing or failing to do what is now the subject of com-
plaint.  An appellant may not prevail unless he clearly ad-
vises the court of what errors he makes complaint.  A failure
to do this waives any point, no matter how well taken it.
might have been if properly presented.  It goes without say-
ing that presentation which conceals a point, and is calculated

to impress the court that there is no such point, will prevent the effective making of the point on rehearing. Let us see if that is not the situation here as to sole heirship.

On original submission it was argued that, even if the widow was the sole heir, still the removal of the administrator was unlawful; that the right to sue for the death of the decedent belongs to the administrator, and not to the widow; that she could not delegate the right to sue; that she had no cause of action which she could settle; that neither a purported settlement by the widow nor a power of attorney from her would justify the removal of the administrator, and a refusal by said administrator to approve the settlement made shows no improper conduct on his part. It was no doubt unconsciously done, but had there been a studied effort it could not more effectively have given emphasis to almost everything other than a claim that the widow is not the sole heir. In this varied and specific assignment of what the widow was and was not, and of what she could and could not do, there is not a suggestion that she must restore the proceeds of the settlement because she has co-heirs. At all events, and beyond debate, there is nowhere a suggestion, a statement or assignment, or a proposition or an argument, that there should be a reversal because the widow was not the sole heir; and that the position of appellee to the contrary rests upon what the record does not show. This led us into the error claimed, if we erred, and alone suffices. Our rules provide plainly that, unless some such point or proposition is made, it shall not be considered on rehearing. Why should appellant be permitted to first answer, now, the said affirmance point made by appellee on original submission? Why did he not say on original submission that the widow is not the sole heir?

II. Perhaps we should stop here. But there is such insistence that our failure to say or do something we might have, threatens the rights of poor, ignorant and easily-imposed-upon aliens, and the efficiency of consular service,

as that a word in addition may not be amiss. For illustration, it is urged that, while we have properly conceded the official right of the consul to administration, yet, in Paragraph 5 of the opinion, we use language with reference to the right to remove a consul administrator which petitioner is constrained to consider as unfortunate when applied to this case; and that the statement there made, when coupled with the official disposition of this case, "is calculated to be misunderstood, misused, and do infinite harm, because it has been made by the Supreme Court of Iowa." It is further said that, by affirming the decision below on the grounds stated, we would seem to withdraw what we seem properly to have granted. Said paragraph holds that there was no just cause for removing the consul, and that, by well-settled rules, he has, by treaty obligation, the initial right to administer upon the property of the subjects of his country; and that "it follows that the removal was unwarranted, and also that the order of removal should have been vacated, unless it be that, for reasons discussed later, such vacation would have accomplished nothing." Though we affirm, we condemn practically everything that was done below. The only thing we could have added was a declaration that a treaty with Italy suspended the probate statutes of this commonwealth, and that consul, once made administrator, could under no circumstances be removed. The petitioner concedes that this is not so, and says he must not be understood as so claiming. And it was held by the Supreme Court of Ohio, in the fairly late case of *Pagano v. Cerri,* 112 N. E. 1037, that no treaty had or could so cripple the right of a state to deal with estates to be administered upon within its borders. Our condemnation is quite likely to deter such actions as are condemned, and we have helped protect, rather than impaired, the effectiveness of consuls and the safety of the estates of aliens. We are at a loss to see how a reversal, which would reinstate an administrator with nothing to administer upon, would be

a stronger deterrent. We feel under no obligation to make absurd orders, to promote an imaginary advantage. We ought not to reverse even if the widow be not the sole heir. What was received can be enlarged only if the settlement be first avoided. That done, and it is hardly probable that the railroad company would peaceably pay a larger amount than the one it settled for. The decedent died in May, 1913, and the cause of action for his injury must have arisen then or earlier. The appeal in this case was submitted to us on February 16, 1915, within a few months less than two years after the injury. It was decided on October 19, 1915, more than two years after the injury. Much more than two years have elapsed by now, and suit against the railroad company is now barred by the general statute of limitations. There is, then, no way to have any property for an administrator, unless it be obtained by a successful suit against the railroad company, or a new settlement with it. As said, the latter is scarcely probable, and the first is impossible, unless we are to assume that the railroad would not interpose the statute of limitations. It therefore remains true, even if the widow is not the sole heir, that we have done all we can do to discourage practices which appellant rightfully contends need discouragement. If the co-heirs have suffered, they have a better remedy against the widow than we are authorized to give on this appeal. It follows that the petition for rehearing must be overruled.—*Petition Overruled.*

DEEMER, LADD and GAYNOR, JJ., concur.